UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KEVIN DE LA CRUZ and ANTHONY TABAS,

                Plaintiffs,

    -against-

MDBH MOBILE 3 INC., MRBH MOBILE INC., MDBH MOBILE 7 INC., MDBH MOBILE INC., CELL PHONES OF HARLEM, INC., HIGH SPEED WIRELESS 1618, INC., GH WIRELESS II, INC., and MORIS HASBANI,

                Defendants.
-----------------------------------------------------------X

22-cv-03053 (SN)

PLAINTIFFS' LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED FACTS

Plaintiffs, Kevin De La Cruz ("De La Cruz") and Anthony Tabas ("Tabas") (collectively, "Plaintiffs"), by and through their undersigned attorneys, The NHG Law Group, P.C., respectfully submits, pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, that the following facts are undisputed:

**A.**     **MDBH Mobile Inc.**

1.     MDBH Mobile Inc. is a New York Corporation. Exhibit C[1] ("Ex. C"), First Amended Complaint ("FAC") [D.E. 42], dated May 10, 2023, at ¶ 23; Exhibit E ("Ex. E"), Deposition Transcript of Moris Hasbani, dated February 8, 2023 ("Hasbani Dep."), at 11:8-20.

2.     Defendant Moris Hasbani ("Hasbani") is part owner of MDBH Mobile Inc. Ex. E, Hasbani Dep, at 7:11-15, 11:8-14.

3.     MDBH Mobile Inc. operated a wireless store located at 14 West 125th Street, New York, New York until the building was sold to a different owner. Ex. E, Hasbani Dep., at 14:2-6.

---

[1] All exhibits referenced herein are annexed to the Declaration of Victoria Spagnolo, Esq., submitted herewith.

4. At the time of the sale of 14 West 125th Street, New York, New York, the wireless store moved to 16 West 125th Street, New York, New York. Ex. E, Hasbani Dep., at 13:22-25,14:10-13; Exhibit H ("Ex. H"), Deposition Transcript of Mayra Amador, dated February 27, 2023 ("Amador Dep."), at 14:10-13.

5. There was never a period of time that the wireless store at 14 West 125th Street closed down and the wireless store at 16 West 125th Street had not yet opened. Ex. E, Hasbani Dep., at 12:17-25; Ex. H, Amador Dep., at 15:4-12.

**B.     Cell Phones of Harlem, Inc.**

6. Cell Phones of Harlem, Inc. operates a wireless store at 16 West 125th Street, New York, New York. Ex. E, Hasbani Dep. at 15:20-16:5; Ex. H, Amador Dep. at 17:21-25.

7. Cell Phones of Harlem, Inc. is a New York Corporation. Ex. C, FAC, at ¶ 27; Exhibit D ("Ex. D"), Second Answer to Amended Complaint ("Amended Answer") [D.E. 53], dated June 12, 2023, at ¶ 15.

8. Hasbani is the President and sole shareholder of Cell Phones of Harlem, Inc. Ex. E, Hasbani Dep., at 16:6-15, 17:16-18.

9. Hasbani signed a lease agreement with the owner of 16 West 125th Street for the purpose of operating a wireless store there. Ex. E, Hasbani Dep., at 14:14-18.

10. Hasbani signed a lease agreement on behalf of Defendant Cell Phones of Harlem, Inc. to operate a wireless store at 16 West 125th Street, New York, New York. Ex. E, Hasbani Dep., at 15:5-25.

11. Hasbani is the only signatory to both Cell Phones of Harlem, Inc.'s checking accounts. Ex. E, Hasbani Dep., at 33:13-25, 34:2.

12. Mayra Amador ("Amador") is the store manager for Cell Phones of Harlem, Inc. Ex. E, Hasbani Dep., at 16:16-24.

13. Amador has been the manager of Cell Phone of Harlem, Inc. from at least 2018. Ex. E, Hasbani Dep., at 18:24-19:2.

14. Everything that Amador has done at work has been through Hasbani. Ex. H, Amador Dep., at 33:14-19.

15. Cell Phones of Harlem, Inc. is open from 9:30 a.m. to 7:30 p.m. Monday through Saturday and from 11:00 a.m. to 6:00 p.m. on Sunday. Ex. H, Amador Dep., at 44:5-24.

16. Cell Phones of Harlem, Inc. is one of Hasbani's busiest wireless stores. Ex. H, Amador Dep., at 54:10-24.

17. Employees of Cell Phones of Harlem, Inc. would sometimes stay passed closing to finish assisting customers or to stock inventory. Ex. H, Amador Dep., at 49:12-52:7; Exhibit F ("Ex. F"), Deposition Transcript of Kevin De La Cruz, dated January 18, 2023 ("De La Cruz Dep."), at 16:11-17:4.

**C.     MDBH Mobile 3 Inc.**

18. MDBH Mobile 3 Inc. is a New York Corporation. Ex. C, FAC, at ¶ 7.

19. Defendant MDBH Mobile 3 Inc. was formed for the purpose of operating a wireless store at 2085 Lexington Avenue, New York, New York. Ex. E, Hasbani Dep., at 30:15-18.

20. Hasbani was an owner of MDBH Mobile 3 Inc. Ex. E, Hasbani Dep., at 32:8-11.

21. Hasbani was a signatory to the MDBH Mobile 3 Inc. checking account. Ex. E, Hasbani Dep., at 32:25-33:9.

**D.     MRBH Mobile Inc. and High Speed Wireless 1618, Inc.**

22. MRBH Mobile Inc. is a New York Corporation. Ex. C, FAC at ¶ 11.

23. MRBH Mobile Inc. owned and operated a cell phone store located at 1618 Westchester Avenue, Bronx, New York. Ex. C, FAC at ¶ 12.

24. Hasbani was an owner of Defendant MRBH Mobile Inc. Ex. E, Hasbani Dep., at 43:10-12.

25. While the wireless store at 1618 Westchester Avenue, Bronx, New York was operating, the legal name for the store changed from MRBH Mobile Inc. to High Speed Wireless 1618, Inc. Ex. E, Hasbani Dep., at 44:20-45:7.

26. Hasbani is the sole owner and shareholder of High Speed Wireless 1618, Inc. Ex. E, Hasbani Dep., at 42:23-43:9, 45:19-24.

27. Hasbani is the signatory to the High Speed Wireless 1618, Inc. tax returns. Ex. E, Hasbani Dep., at 55:21-25.

28. Since High Speed Wireless 1618, Inc. has begun its operations, it has been open seven (7) days a week from 9:30 a.m. to 7:30 p.m. on Monday through Saturday and from 11:00 a.m. to 6:00 p.m. on Sunday. Ex. E, Hasbani Dep., at 47:7-19.

**E.    MDBH Mobile 7 Inc.**

29. MDBH Mobile 7 Inc. is a New York Corporation. Ex. C, FAC, at ¶ 19.

30. Defendant MDBH Mobile 7 Inc. operates a wireless store located at 271 West 125th Street, New York, New York. Ex. E, Hasbani Dep., at 54:20-23.

31. Hasbani is the owner of that wireless store. Ex. E, Hasbani Dep., at 54:7-9.

32. Hasbani is the President, sole owner, and sole shareholder of MDBH Mobile 7 Inc. Ex. E, Hasbani Dep., at 55:3-14.

33. Hasbani is the signatory to the MDBH Mobile 7 Inc. tax returns. Ex. E, Hasbani Dep., at 55:15-20.

34. Hasbani is the signatory to the MDBH Mobile 7 Inc. checking accounts. Ex. E, Hasbani Dep., at 58:14-23.

**F.    GH Wireless II, Inc.**

35. GH Wireless II, Inc. is a New York Corporation. Ex. C, FAC, at ¶ 31.

36. Defendant GH Wireless II, Inc. operates a wireless store located at 43 South Fourth Avenue, Mount Vernon, New York. Ex. E, Hasbani Dep., at 60:8-24.

37. Hasbani is the sole owner and shareholder of GH Wireless II, Inc. Ex. E, Hasbani Dep., at 61:5-9.

38. Hasbani is the signatory to GH Wireless II, Inc.'s bank accounts and corporate tax returns. Ex. E, Hasbani Dep., at 61:10-14.

**G.    Kevin De La Cruz ("De La Cruz")**

39. De La Cruz was hired to work as a retail clerk at several wireless stores owned by Hasbani. Ex. C, FAC, at ¶ 50.

40. De La Cruz was employed by Defendants from on or about February 2017 to on or about March 25, 2018 and then again from in or about December 2018 until March 30, 2022. Ex. C, FAC, at ¶ 51; Exhibit K ("Ex. K"), De La Cruz Chart.

41. De La Cruz worked at the Cell Phones of Harlem, Inc. wireless store. Ex. E, Hasbani Dep., at 42:17-19, 61:25-62:3.

42. De La Cruz worked at the Cell Phones of Harlem, Inc. wireless store from February 2017 until March 25, 2018. Ex. K, De La Cruz Chart.

43. During this time, De La Cruz worked six (6) to seven (7) days a week and at least ten (10) hours a day from Monday through Saturday and seven (7) hours a day on Sunday. Ex. F,

De La Cruz Depo., at 16:6-24, 18:3-25, 19:2-3, 40:17-41:6, 45:2-46:16; Ex. H, Amador Dep., at 65:22-66:6.

44. During this time period, the standard workweek was six (6) days. Ex. F, De La Cruz Dep., at 17:24-18:2.

45. From February 2017 to January 28, 2018, De La Cruz was paid $80.00 a day. Ex. F, De La Cruz Dep., at 15:21-16:5, 36:18-22.

46. In January 2018, De La Cruz received an increase in pay to $100.00 a day. Ex. F, De La Cruz Dep., at 49:20-50:18.

47. De La Cruz worked at the MDBH Mobile 3 Inc. wireless store. Ex. E, Hasbani Dep., at 36:20-22, 62:5-7.

48. De La Cruz worked at the MDBH Mobile 3, Inc. wireless store from December 2018 to March 21, 2020. Ex. K, De La Cruz Chart; Exhibit L ("Ex. L"), Defendants' 2018 Internal Pay Records; Exhibit M ("Ex. M"), Defendants' 2019 Internal Pay Records; Exhibit N ("Ex. N"), Defendants' 2020 Internal Pay Records.

49. When De La Cruz worked at the MDBH Mobile 3 Inc. wireless store, his schedule was store open to store close. Ex. E, Hasbani Dep., at 38:3-5.

50. During this time, De La Cruz was paid $100.00 a day. Ex. L, Defendants' 2018 Internal Pay Records; Ex. M, Defendants' 2019 Internal Pay Records; Ex. N, Defendants' 2020 Internal Pay Records.

51. During this time, De La Cruz regularly worked six (6) days a week. Ex. L, Defendants' 2018 Internal Pay Records; Ex. M, Defendants' 2019 Internal Pay Records; Ex. N, Defendants' 2020 Internal Pay Records.

52. During this time, De La Cruz worked ten (10) hours a day. Ex. F, De La Cruz Dep., at 98:22-99:15, 108:11-17.

53. During the week January 6, 2019 to January 12, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

54. During the week February 3, 2019 to February 9, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

55. During the week March 24, 2019 to March 30, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

56. During the week April 14, 2019 to April 20, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

57. During the week July 7, 2019 to July 13, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

58. During the week August 11, 2019 to August 17, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

59. During the week December 8, 2019 to December 14, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

60. During the week January 12, 2020 to January 18, 2020, De La Cruz worked seven (7) days at the MDBH Mobile 3, Inc. wireless store. Ex. N, Defendants' 2020 Internal Pay Records.

61. During the week January 26, 2020 to February 1, 2020, De La Cruz worked seven (7) days at the MDBH Mobile 3, Inc. wireless store. Ex. N, Defendants' 2020 Internal Pay Records.

62. De La Cruz worked at the High Speed Wireless 1618, Inc. wireless store. Ex. E, Hasbani Dep., at 52:15-18, 62:8-10.

63. De La Cruz worked at the High Speed Wireless 1618, Inc. wireless store from March 2020 to July 11, 2020. Ex. K, De La Cruz Chart; Ex. N, Defendants' 2020 Internal Pay Records.

64. During this time, De La Cruz was paid $120.00 a day. Ex. N, Defendants' 2020 Internal Pay Records.

65. During this time, De La Cruz worked six (6) days a week and at least ten (10) hours a day. Ex. F, De La Cruz Dep., at 132:3-19; Ex. N, Defendants' 2020 Internal Pay Records.

66. During the week of March 29, 2020 to April 4, 2020, De La Cruz worked six (6) days at the High Speed Wireless 1618, Inc. wireless store. Ex. N, Defendants' 2020 Internal Pay Records.

67. During the week of May 10, 2020 to May 16, 2020, De La Cruz worked six (6) days at the High Speed Wireless 1618, Inc. wireless store. Ex. N, Defendants' 2020 Internal Pay Records.

68. De La Cruz worked at the MDBH Mobile 7 Inc. wireless store. Ex. E, Hasbani Dep., at 59:3-5, 62:11-12.

69. De La Cruz worked at the MDBH Mobile 7 Inc. wireless store from July 12, 2020 to July 17, 2021. Ex. K, De La Cruz Chart; Ex. N, Defendants' 2020 Internal Pay Records; Exhibit O ("Ex. O"), Defendants' 2021 Internal Pay Records.

70. During the time period July 12, 2020 to April 24, 2021, De La Cruz was paid $120.00 a day. Ex. N, Defendants' 2020 Internal Pay Records; Ex. O, Defendants' 2021 Internal Pay Records.

71. During the time period April 25, 2021 to July 17, 2021, De La Cruz was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records.

72. During the time period July 12, 2020 to July 17, 2021, De La Cruz regularly worked six (6) days a week. Ex. N, Defendants' 2020 Internal Pay Records; Ex. O, Defendants' 2021 Internal Pay Records.

73. During the week of July 19, 2020 to July 25, 2020, De La Cruz worked six (6) days at the MDBH Mobile 7 Inc. wireless store and was paid $120.00 a day. Ex. N, Defendants' 2020 Internal Pay Records.

74. During the week of August 16, 2020 to August 22, 2020, De La Cruz worked seven (7) days at the MDBH Mobile 7 Inc. wireless store and was paid $120.00 a day. Ex. N, Defendants' 2020 Internal Pay Records.

75. During the week of November 15, 2020 to November 21, 2020, De La Cruz worked seven (7) days at the MDBH Mobile 7 Inc. wireless store and was paid $120.00 a day. Ex. N, Defendants' 2020 Internal Pay Records.

76. During the week of April 25, 2021 to May 1, 2021, De La Cruz worked six (6) days at the MDBH Mobile 7 Inc. wireless store and was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records.

77. During the week of June 20, 2021 to June 26, 2021, De La Cruz worked six (6) days at the MDBH Mobile 7 Inc wireless store and was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records.

78. De La Cruz worked at the Cell Phones of Harlem, Inc. wireless store again from July 18, 2021 to on or about August 11, 2021. Ex. K, De La Cruz Chart; Ex. O, Defendants' 2021 Internal Pay Records.

79. During this time, De La Cruz was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records.

80.   De La Cruz did not work during the months of September and October 2018. Ex. K, De La Cruz Chart.

81.   De La Cruz returned to the Cell Phones of Harlem, Inc. wireless store and worked there from October 3, 2021 to December 11, 2021. Ex. K, De La Cruz Chart; Ex. O, Defendants' 2021 Internal Pay Records.

82.   During this time, De La Cruz was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records.

83.   De La Cruz returned to the High Speed Wireless 1618, Inc. wireless store and worked from December 12, 2021 to March 26, 2022. Ex. K, De La Cruz Chart; Ex. O, Defendants' 2021 Internal Pay Records; Exhibit P ("Ex. P"), Defendants' 2022 Internal Pay Records.

84.   During this time, De La Cruz was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records; Ex. P, Defendants' 2022 Internal Pay Records.

85.   De La Cruz returned to the Cell Phones of Harlem, Inc. wireless store and worked there for the week of March 27, 2021 through April 2, 2021. Ex. P, Defendants' 2022 Internal Pay Records.

86.   De La Cruz was always paid a daily rate of pay. Ex. E, Hasbani Dep., at 37:15-16.

87.   De La Cruz was never paid time and a half his regular rate of pay when he worked more than forty (40) hours a week. Ex. E, Hasbani Dep., at 75:13-16); Ex. F, De La Cruz Dep., at 47:5-10.

88.   De La Cruz never used a time clock to punch in and punch out. Ex. E, Hasbani Dep., at 41:14-21.

H.    **Anthony Tabas ("Tabas")**

89.    Tabas was hired to work as a retail clerk at several wireless stores owned by Hasbani. Ex. C, FAC, at ¶ 50.

90.    Tabas was employed by Defendants from on or about June 2016 to October 2018. Ex. C, FAC, at ¶ 50; Exhibit I ("Ex. I"), Tabas Chart.

91.    When Tabas was hired, he was placed at the GH Wireless Inc. wireless store. Ex. E, Hasbani Dep., at 60:20-23.

92.    Tabas worked at the GH Wireless Inc. store from June 26, 2016 through the end of July 2016. Ex. E, Hasbani Dep., at 64:11-25, 65:2-5; Ex. I, Tabas Chart.

93.    During this time, Tabas worked six (6) days a week and ten (10) hours a day. Exhibit G ("Ex. G"), Deposition Transcript of Anthony Tabas, dated January 19, 2023 ("Tabas Dep."), at 33:16-22.

94.    During this time, Tabas was paid $100.00 to $120.00 a day plus commissions. Ex. G, Tabas Dep., at 31:21-32:18, 45:21-46:3.

95.    During this time, Tabas was never paid any overtime compensation. Ex. G, Tabas Dep., at 33:23-25, 46:14-19.

96.    Tabas worked at the Cell Phones of Harlem, Inc. wireless store. Ex. E, Hasbani Dep., at 59:20-23.

97.    Tabas worked at the Cell Phones of Harlem, Inc. wireless store from August 2016 through December 2017. Ex. E, Hasbani Dep., at 65:9-13; Ex. I, Tabas Chart.

98.    During this time, Tabas worked six (6) days a week and at least ten (10) hours each day. Ex. G, Tabas Dep., at 59:17-60:20, 84:18-25.

99. During this time, Tabas was paid $140.00 a day. Ex. G, Tabas Dep., at 54:24-55:20, 57:12-19.

100. During this time, Tabas was never paid for any extra hours, he was only paid his daily rate of pay. Ex. G, Tabas Dep., at 61:19-62:13.

101. Tabas worked at the High Speed Wireless 1618, Inc. wireless store. Ex. E, Hasbani Dep., at 46:21-22, 60:3-5.

102. Tabas worked at the High Speed Wireless 1618, Inc. wireless store from January 2018 through June 2018. Ex. E, Hasbani Dep., at 68:14-19; Ex. I.

103. During this time, Tabas was paid $150.00 a day. Exhibit J ("Ex. J"), Defendants' Internal Pay Records for Tabas.

104. During this time, Tabas worked six (6) to seven (7) days a week. Ex. G, Tabas Dep. at 93:8-12.

105. During this time, Tabas worked ten (10) hours a day on Monday through Sunday Ex. G, Tabas Dep., at 94:23-25, 95:2-21.

106. During the week January 28, 2018 to February 3, 2018, Tabas worked six days (6) at the High Speed Wireless 1618, Inc. store. Ex. J, Defendants' Internal Pay Records for Tabas.

107. During the weeks beginning on February 11, 2018 and February 18, 2018, Tabas worked seven days (7) per week at the High Speed Wireless 1618, Inc. store. Ex. J, Defendants' Internal Pay Records for Tabas.

108. During the weeks beginning on February 25, 2018 and through March 17, 2018, Tabas worked six days (6) at the High Speed Wireless 1618, Inc. store. Ex. J, Defendants' Internal Pay Records for Tabas.

109. During the week March 18, 2018 to March 24, 2018, Tabas worked seven days (7) at the High Speed Wireless 1618, Inc. store. Ex. J, Defendants' Internal Pay Records for Tabas.

110. During the week March 25, 2018 to March 31, 2018, Tabas worked six days (6) at the High Speed Wireless 1618, Inc. store. Ex. J, Defendants' Internal Pay Records for Tabas.

111. Tabas worked at the MDBH Mobile 3 Inc. wireless store. Ex. E, Hasbani Dep., at 34:3-10.

112. Tabas worked at the MDBH Mobile 3 Inc. wireless store from July 2018 to October 3, 2018. Ex. E, at 68:20-25; Ex. I, Tabas Chart

113. During this time, Tabas worked six (6) days a week and ten (10) hours each day Ex. G, Tabas Dep., at 119:20-25, 120:12.

114. Tabas worked at the MDBH Mobile 3 Inc. wireless store where he was the only employee that worked at the store. Ex. E, Hasbani Dep., at 30:6-11.

115. During this time, Tabas was paid $130.00 a day. Ex. J, Defendants' Internal Pay Records for Tabas.

116. During his employment, Tabas was always paid by the day, Ex. E, Hasbani Dep., at 27:22-24, 74:8-9.

117. Tabas was never paid overtime compensation when he worked more than forty (40) hours a week. Ex. E, Hasbani Dep., at 74:13-16; Ex. G, Tabas Dep., at 125:14-17.

118. Tabas was never paid time and a half his regular rate of pay when he worked more than forty (40) hours a week. Ex. E, Hasbani Dep., at 75:8-12.

119. Whenever Tabas worked a half day, he was just paid for a half a day. Ex. E, Hasbani Dep., at 78:17-20.

120. Tabas' schedule during his employment was from store open to store close. Ex. E, Hasbani Dep., at 29:11-14.

121. Tabas never used a time clock to punch in and punch out. Ex. E, Hasbani Dep., at 41:14-21.

I. **Moris Hasbani ("Hasbani")**

122. Hasbani is a resident of the State of New York. Ex. C, FAC, at ¶ 36.

123. Hasbani has participated on a regular basis in overseeing the wireless stores that he owns. Ex. E., Hasbani Dep., at 63:9-15.

124. Hasbani decides the days and hours that his cell phone stores are open for business. Ex. E, Hasbani Dep., at 20:2-13.

125. Hasbani has the authority to hire employees, and in fact did hire employees. Ex. E, Hasbani Dep., at 37:6-11; 49:8-14, 50:2-4.

126. Hasbani hired his brother, Eli, to help oversee the wireless stores that he owns. Ex. E, Hasbani Dep., at 49:8-14, 50:2-4.

127. Hasbani hired De La Cruz to work at several of his stores. Ex. E, Hasbani Dep., at 37:6-11.

128. Hasbani decided when De La Cruz was going to work at the MDBH Mobile 3 Inc. wireless store located at 2085 Lexington Avenue, New York, New York. Ex. E, Hasbani Dep., at 36:23-37:2.

129. Hasbani decided that De La Cruz was going to work at the MDBH Mobile 7 Inc. wireless store located at 271 West 125th Street, New York, New York. Ex. E, Hasbani Dep., at 59:6-8.

130. Hasbani hired Tabas and placed him to work in the wireless store operated by GH Wireless II, Inc. Ex. E, Hasbani Dep., at 27:11-21; 61:15-20.

131. Hasbani decided that Tabas was going to work at the MDBH Mobile 3 Inc. wireless store located at 2085 Lexington Avenue, New York, New York. Ex. E, Hasbani Dep., at 34:3-5.

132. Hasbani decided which wireless stores Plaintiffs were going to work at and when they were going to work for each store. Ex. E, Hasbani Dep., at 28:8-10, 37:12-14, 62:17-20.

133. Hasbani has the authority to fire employees, and in fact did fire employees. Ex. G, Tabas Dep., at 123:21-124:19.

134. Hasbani has the authority to set employees' schedules. Ex. H, Amador Dep., at 34:20-22.

135. Hasbani has the ultimate responsibility to ensure his employees got paid. Ex. H, Amador Dep., at 32:18-20, 33:8-19

136. Hasbani decides the manner in which employees are paid. Ex. E, Hasbani Dep., at 22:4-13.

137. Hasbani sets the daily rates of all the employees. Ex. F, De La Cruz Dep., at 37:22-25; Ex. H, Amador Dep., at 79:9-11.

138. Hasbani decides Amador's daily rate of pay. Ex. E, Hasbani Dep.,, at 19:5-7.

139. Hasbani decides what Eli's daily rate is. Ex. E, Hasbani Dep., at 49:23-25.

140. During Tabas' employment, Hasbani decided the daily rate of pay that Tabas received. Ex. E, Hasbani Dep., at 27:25-28:3, 36:8-11, 47:3-6.

141. During De La Cruz's employment, Hasbani decided the daily rate of that De La Cruz received. Ex. E, Hasbani Dep., at 37:17-19.

142. Hasbani has the authority to increase or decrease employee's daily rates. Ex. E, Hasbani Dep., at 28:4-7, 37:20-23, 81:14-18.

143. Hasbani has the authority to decide the amount of commissions employees would receive. Ex. E, Hasbani Dep., at 36:12-19.

144. Hasbani determines employees' job duties. Ex. E, Hasbani Dep., at 50:5-7.

145. Hasbani is Amador's boss and direct supervisor. Ex. H, Amador Dep., at 11:5-8.

146. Hasbani was De La Cruz's direct boss when he worked at the MDBH Mobile 3 Inc. wireless store. Ex. E, Hasbani Dep., at 37:24-38:2.

147. Hasbani was Tabas' direct boss when Tabas worked at the MDBH Mobile 3 Inc. wireless store at 2085 Lexington Avenue, New York, New York. Ex. E, Hasbani Dep., at 36:3-7.

148. Hasbani decided to change the corporate name from MRBH Mobile Inc. to High Speed Wireless 1618, Inc. Ex. E, Hasbani Dep., at 53:2-5.

**J.     Record Keeping Policies**

149. Employees of Cell Phones of Harlem, Inc. are not given paystubs with their wages. Ex. H, Amador Dep. at 57:11-14, 60:3-5.

150. De La Cruz never received paystubs with his weekly wages. Ex. H, Amador Dep., at 60:3-8, 80:21-24.

151. Tabas never received paystubs during his employment. Ex. H, Amador Dep., at 60:3-8, 80:21-24.

152. De La Cruz never received a wage notice at the time of his hiring. Ex. H, Amador Dep. at 72:16-74:10.

**K.    Defendants' Time Keeping and Pay Policies**

153.    None of the wireless stores owned by Hasbani have ever had a time clock in them. Ex. E, Hasbani Dep., at 41:8-10, 108:22-24.

154.    No employee that has ever worked at Hasbani's wireless stores has punched in and punched out. Ex. E, Hasbani Dep., at 41:22-42:3.

155.    Employees of Cell Phones of Harlem, Inc. are paid a daily rate of pay. Ex. H, Amador Dep., at 56:4-6, 71:13-17.

156.    Amador receives a daily rate of pay as her compensation. Ex. E, Hasbani Dep., at 19:3-4, Ex. H, Amador Dep., at 63:18-23, 76:24-77:2.

157.    Eli receives a daily rate of pay. Ex. E, Hasbani Dep., at 49:21-22.

158.    No employee who ever worked for a wireless store owned by Hasbani has been paid time and a half when they worked more than forty (40) hours in a week. Ex. E, Hasbani Dep., at 75:21-25; Ex. H, Amador Dep., at 68:2-24, 70:5-10, 71:8-72:4.

159.    Amador has never been paid overtime compensation for working more than forty hours a week. Ex. H, Amador Dep., at 67:17-21, 68:13-24, 75:21-25.

160.    Hasbani has never instructed Amador to pay any of the employees at the Cell Phones of Harlem, Inc. wireless store overtime compensation when they worked more than forty (40) hours in a week. Ex. H, Amador Dep., at 71:25-72:4.

**L.    FLSA Coverage**

161.    The wireless stores at which Tabas and De La Cruz worked accepted credit cards. Ex. E, Hasbani Dep., at 50:16-18.

162.    Tabas' and De La Cruz's job duties were to sell phones and accessories. Ex. E, Hasbani Dep., at 50:24-51:9; Ex. G, Tabas Dep., at 29:14-21; Ex. H, Amador Dep., at 59:9-14.

163. As part of their job duties, Tabas and De La Cruz processed credit card transactions on a daily basis. Ex. E, Hasbani Dep., at 51:15-20.

164. As part of their job duties, Tabas and De La Cruz were responsible for stocking inventory and store maintenance, including sweeping, mopping, and otherwise cleaning the back office, bathroom, the front of the store, and outside the store. Ex. F, De La Cruz Dep., at 35:17-36:7; Ex. G, Tabas Dep., at 92:25-93:7; Ex. H, Amador Dep., at 51:3-52:20).

165. Tabas and De La Cruz were individuals engaged in interstate commerce within the scope of their job duties by processing credit card payments through companies located outside of the State of New York. Ex. C, FAC, at ¶ 88; Ex. D, Amended Answer, at ¶ 35.

**M.    Willfulness**

166. Hasbani has a basic understanding of what overtime compensation is, specifically that when an employee works over forty (40) hours per week, they are entitled to received time and half their regular rate of pay for every hour over forty (40). Ex. E, Hasbani Dep., at 74:17-75:7.

167. Hasbani does not recall if he ever tried to determine whether or not any of the employees working at the stores that he owned should be paid overtime compensation when they worked more than forty (40) hours a week. Ex. E, Hasbani Dep., at 87:2-19.

168. Defendants were aware of Plaintiffs' work hours but failed to pay them the full amount of compensation to which they were entitled. Ex. E, Hasbani Dep., at 75:3-16. Ex. J; Ex. L; Ex. M; Ex. N; Ex. O; Ex. P.

**[Continued on Next Page]**

169. Defendants' failure to pay proper wages in a timely manner has been without good faith, willfully, and with a reckless disregard for Plaintiffs' rights. Ex. C, FAC, at ¶ 82.

Dated: Massapequa, New York
June 26, 2023

The NHG LAW GROUP., P.C.

*Victoria Spagnolo*
By: Victoria Spagnolo, Esq.
*Attorneys for the Plaintiffs*
4242 Merrick Road
Massapequa, New York 11758
Tel: 516.228.5100
VSpagnolo@nhglaw.com