UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
KEVIN DE LA CRUZ and ANTHONY TABAS,        **Case No. 1:22-cv-03053-SN**

                              Plaintiffs,

              -against-

MDBH MOBILE 3 INC., MRBH MOBILE INC.,
MDBH MOBILE 7 INC., MDBH MOBILE INC.,
CELL PHONES OF HARLEM, INC., HIGH
SPEED WIRELESS 1618, INC., GH WIRELESS
II, INC., and MORIS HASBANI,
                              Defendants.
---------------------------------------------------------------X

### DEFENDANTS' RULE 56.1(b) RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants, **MDBH MOBILE 3 INC., MRBH MOBILE INC., MDBH MOBILE 7 INC., MDBH MOBILE INC., CELL PHONES OF HARLEM, INC., HIGH SPEED WIRELESS 1618, INC., GH WIRELESS II, INC.**, and **MORIS HASBANI**, though their attorneys, **HAMRA LAW GROUP, P.C.**, pursuant to FRCP Rule 56.1(b), submit their Counterstatement of Material Facts responsive to Plaintiff's Statement of Material Facts, as follows:

**A. MDBH Mobile Inc.**

1. MDBH Mobile Inc. is a New York Corporation. Exhibit C ("Ex. C"), First Amended Complaint ("FAC") [D.E. 42], dated May 10, 2023, at ¶ 23; Exhibit E ("Ex. E"), Deposition Transcript of Moris Hasbani, dated February 8, 2023 ("Hasbani Dep."), at 11:8-20.[1]

**RESPONSE:** Undisputed.

---

[1] For purposes of Defendants' Counterstatement of Material Facts to Plaintiff's Statement of Material Facts only, Defendants will adopt and use Plaintiff's Exhibits.

2. Defendant Moris Hasbani ("Hasbani") is part owner of MDBH Mobile Inc. Ex. E, Hasbani Dep, at 7:11-15, 11:8-14.

**RESPONSE:** Undisputed.

3. MDBH Mobile Inc. operated a wireless store located at 14 West 125th Street, New York, New York until the building was sold to a different owner. Ex. E, Hasbani Dep., at 14:2-6.

**RESPONSE:** Undisputed.

4. At the time of the sale of 14 West 125th Street, New York, New York, the wireless store moved to 16 West 125th Street, New York, New York. Ex. E, Hasbani Dep., at 13:22-25,14:10-13; Exhibit H ("Ex. H"), Deposition Transcript of Mayra Amador, dated February 27, 2023 ("Amador Dep."), at 14:10-13.

**RESPONSE:** Undisputed.

5. There was never a period of time that the wireless store at 14 West 125th Street closed down and the wireless store at 16 West 125th Street had not yet opened. Ex. E, Hasbani Dep., at 12:17-25; Ex. H, Amador Dep., at 15:4-12.

**RESPONSE:** Disputed. Defendant MORIS HASBANI (hereinafter "Defendant Hasbani") testified that he could not recall with certainty as to the dates of when the stores at 14 West 125th Street and 16 West 125th Street closed and opened, respectively. See **Exhibit "E"** at p. 12, l. 10 – p. 13, l. 14. Moreover, Defendant Hasbani and nonparty witness MAYA AMADOR (hereinafter ("Ms. Amador") were not asked, and did not testify to, if the 16 West 125th Street operated in place of the 14 West 125th Street. See Plaintiffs' **Exhibits "E"** and **"H"** generally.

**B. Cell Phones of Harlem, Inc.**

6. Cell Phones of Harlem, Inc. operates a wireless store at 16 West 125th Street, New York, New York. Ex. E, Hasbani Dep. at 15:20-16:5; Ex. H, Amador Dep. at 17:21-25.

**RESPONSE:** Undisputed.

7. Cell Phones of Harlem, Inc. is a New York Corporation. Ex. C, FAC, at ¶ 27; Exhibit D ("Ex. D"), Second Answer to Amended Complaint ("Amended Answer") [D.E. 53], dated June 12, 2023, at ¶ 15.

**RESPONSE:** Undisputed.

8. Hasbani is the President and sole shareholder of Cell Phones of Harlem, Inc. Ex. E, Hasbani Dep., at 16:6-15, 17:16-18.

**RESPONSE:** Disputed as to allegation of being the sole shareholder. Defendant Hasbani was not asked if he held 100% (one hundred percent) of Cell Phones of Harlem shares concurrently or jointly with another individual, such as Defendant Hasbani's business partners referenced in his deposition. See Plaintiffs' **Exhibit "E"** at p. 7, l. 16-24 and p. 45, l. 12-17.

9. Hasbani signed a lease agreement with the owner of 16 West 125th Street for the purpose of operating a wireless store there. Ex. E, Hasbani Dep., at 14:14-18.

**RESPONSE:** Undisputed.

10. Hasbani signed a lease agreement on behalf of Defendant Cell Phones of Harlem, Inc. to operate a wireless store at 16 West 125th Street, New York, New York. Ex. E, Hasbani Dep., at 15:5-25.

**RESPONSE:** Undisputed.

11. Hasbani is the only signatory to both Cell Phones of Harlem, Inc.'s checking accounts. Ex. E, Hasbani Dep., at 33:13-25, 34:2.

**RESPONSE:** Undisputed.

12. Mayra Amador ("Amador") is the store manager for Cell Phones of Harlem, Inc. Ex. E, Hasbani Dep., at 16:16-24.

**RESPONSE:** Disputed. Ms. Amador and Plaintiff ANTHONY TABAS (hereinafter, "Plaintiff Tabas") were both managers for Cell Phones of Harlem, Inc., pursuant to Ms. Amadaor's and Plaintiff Tabas' job responsibilities and independent authority to carry out their respective job responsibilities at Cell Phones of Harlem, Inc.. <u>See</u> Plaintiffs' **Exhibit "G,"** Deposition Transcript of Anthony Tabas (<u>infra</u>), at p. 64, l. 5-20, p. 66, l. 4-5, and p. 67-73.

13. Amador has been the manager of Cell Phone of Harlem, Inc. from at least 2018. Ex. E, Hasbani Dep., at 18:24-19:2.

**RESPONSE:** Disputed. Ms. Amador and Plaintiff Tabas were both managers for Cell Phones of Harlem, Inc., pursuant to Ms. Amadaor's and Plaintiff Tabas' job responsibilities and independent authority to carry out their respective job responsibilities at Cell Phones of Harlem, Inc.. Plaintiff Tabas was also a manager at Cell Phones of Harlem, Inc., for at least the first 1.5 weeks of January 2018. <u>See</u> Plaintiffs' **Exhibit "I,"** <u>infra</u>, at p. 64, l. 5-20, p. 66, l. 4-5, and p. 67-73.; <u>see also</u> Plaintiff's **Exhibit "Q,"** Plaintiff Tabas' Pay Schedule for 2018 (<u>infra</u>).

14. Everything that Amador has done at work has been through Hasbani. Ex. H, Amador Dep., at 33:14-19.

**RESPONSE:** Disputed. Ms. Amador has independent authority to set workers' work schedules and direct job responsibilities. <u>See</u> Plaintiffs' **Exhibit "I,"** <u>infra</u>, at p. 63, l. 23 – p. 64, l. 5; and p. 136, l. 23-24 and p. 137, l. 5-6.

15. Cell Phones of Harlem, Inc. is open from 9:30 a.m. to 7:30 p.m. Monday through Saturday and from 11:00 a.m. to 6:00 p.m. on Sunday. Ex. H, Amador Dep., at 44:5-24.

<u>**RESPONSE:**</u> Disputed. Ms. Amador testified to contradicting opening times for Cell Phones of Harlem, Inc., did not correct herself at her deposition, and was not asked by the questioning attorney to confirm which hours were correct. <u>See</u> Plaintiffs' **Exhibit "H,"** at p. 44, l. 13-20 and p. 55, l. 7-9.

16. Cell Phones of Harlem, Inc. is one of Hasbani's busiest wireless stores. Ex. H, Amador Dep., at 54:10-24.

<u>**RESPONSE:**</u> Disputed. Defendant Amador does not implicitly nor explicitly describe Cell Phones of Harlem, Inc., as "one of [his] busiest wireless stores." <u>See</u> Plaintiffs' **Exhibit "H,"** at p. 54, l. 10-24 (Q: This particular store, did it generate a lot of cash on a daily basis? A: I mean, throughout my years, like I said, the times have changed. Business was very busy back then. I would say it's one of Moris' busiest stores, **so I've been told**.) (emphasis added).

17. Employees of Cell Phones of Harlem, Inc. would sometimes stay passed closing to finish assisting customers or to stock inventory. Ex. H, Amador Dep., at 49:12-52:7; Exhibit F ("Ex. F"), Deposition Transcript of Kevin De La Cruz, dated January 18, 2023 ("De La Cruz Dep."), at 16:11-17:4.

<u>**RESPONSE:**</u> Undisputed.

**C. MDBH Mobile 3 Inc.**

18. MDBH Mobile 3 Inc. is a New York Corporation. Ex. C, FAC, at ¶ 7.

<u>**RESPONSE:**</u> Undisputed.

19. Defendant MDBH Mobile 3 Inc. was formed for the purpose of operating a wireless store at 2085 Lexington Avenue, New York, New York. Ex. E, Hasbani Dep., at 30:15-18.

**RESPONSE:** Undisputed.

20. Hasbani was an owner of MDBH Mobile 3 Inc. Ex. E, Hasbani Dep., at 32:8-11.

**RESPONSE:** Undisputed.

21. Hasbani was a signatory to the MDBH Mobile 3 Inc. checking account. Ex. E, Hasbani Dep., at 32:25-33:9.

**RESPONSE:** Undisputed.

**D. MRBH Mobile Inc. and High Speed Wireless 1618, Inc.**

22. MRBH Mobile Inc. is a New York Corporation. Ex. C, FAC at ¶ 11.

**RESPONSE:** Undisputed.

23. MRBH Mobile Inc. owned and operated a cell phone store located at 1618 Westchester Avenue, Bronx, New York. Ex. C, FAC at ¶ 12.

**RESPONSE:** Undisputed.

24. Hasbani was an owner of Defendant MRBH Mobile Inc. Ex. E, Hasbani Dep., at 43:10-12.

**RESPONSE:** Undisputed.

25. While the wireless store at 1618 Westchester Avenue, Bronx, New York was operating, the legal name for the store changed from MRBH Mobile Inc. to High Speed Wireless 1618, Inc. Ex. E, Hasbani Dep., at 44:20-45:7.

**RESPONSE:** Disputed. Defendant Hasbani does not testify that the name of the wireless store operating at 1618 Westchester Avenue, Bronx, New York, was changed for legal purposes. See Plaintiffs' **Exhibit "E"** at p. 44, l. 20 – p. 45, l. 7.

26. Hasbani is the sole owner and shareholder of High Speed Wireless 1618, Inc. Ex. E, Hasbani Dep., at 42:23-43:9, 45:19-24.

**RESPONSE:** Disputed. Defendant Hasbani testified that he is "an owner" of High Speed Wireless 1618, Inc., as opposed to testifying that he is the "sole owner" per Plaintiff's Statement Number 26. See **Exhibit "E"** at p. 42, l. 23 – p. 43, l. 9 (Defendant Hasbani specifically testifies to being "an owner" as opposed to "the owner").

27. Hasbani is the signatory to the High Speed Wireless 1618, Inc. tax returns. Ex. E, Hasbani Dep., at 55:21-25.

**RESPONSE:** Disputed. Defendant Hasbani testified that he is "a" signatory to the High Speed Wireless 1618, Inc. tax returns, as opposed to testifying that he is "the" signatory per Plaintiff's Statement Number 27. See Plaintiffs' **Exhibit "E"** at p. 55, l. 21-25.

28. Since High Speed Wireless 1618, Inc. has begun its operations, it has been open seven (7) days a week from 9:30 a.m. to 7:30 p.m. on Monday through Saturday and from 11:00 a.m. to 6:00 p.m. on Sunday. Ex. E, Hasbani Dep., at 47:7-19.

**RESPONSE:** Disputed. High Speed Wireless 1618, Inc., was open seven (7) days a week from 9:30 a.m. to 7:30 p.m. on Monday through Saturday and from 11:00 a.m. to 6:00 p.m. on Sunday **while Plaintiff Tabas worked at that store**. See Plaintiffs' **Exhibit "E"** at p. 47, l. 7-13.

**E. MDBH Mobile 7 Inc.**

29. MDBH Mobile 7 Inc. is a New York Corporation. Ex. C, FAC, at ¶ 19.

**RESPONSE:** Undisputed.

30. Defendant MDBH Mobile 7 Inc. operates a wireless store located at 271 West 125th Street, New York, New York. Ex. E, Hasbani Dep., at 54:20-23.

**RESPONSE:** Undisputed.

31. Hasbani is the owner of that wireless store. Ex. E, Hasbani Dep., at 54:7-9.

**RESPONSE:** Undisputed.

32. Hasbani is the President, sole owner, and sole shareholder of MDBH Mobile 7 Inc. Ex. E, Hasbani Dep., at 55:3-14.

**RESPONSE:** Disputed as to allegation of being the sole shareholder. Defendant Hasbani was not asked if he held 100% (one hundred percent) of Cell Phones of Harlem shares concurrently or jointly with another individual, such as Defendant Hasbani's business partners referenced in his deposition. See **Exhibit "E"** at p. 7, l. 16-24; p. 45, l. 12-17; and p. 55, l. 12-14.

33. Hasbani is the signatory to the MDBH Mobile 7 Inc. tax returns. Ex. E, Hasbani Dep., at 55:15-20.

**RESPONSE:** Undisputed.

34. Hasbani is the signatory to the MDBH Mobile 7 Inc. checking accounts. Ex. E, Hasbani Dep., at 58:14-23.

**RESPONSE:** Disputed. Defendant Hasbani testified that he is "a" signatory to MDBH Mobile 7 Inc. checking accounts, not "the" checking accounts. See Plaintiffs' **Exhibit "E"** at p. 58, l. 14-23.

**F. GH Wireless II, Inc.**

35. GH Wireless II, Inc. is a New York Corporation. Ex. C, FAC, at ¶ 31.

**RESPONSE:** Disputed. No such entity exists under the control, operation, or founding of Defendant Hasbani. Defendant Hasbani testified to the existence of "GH Wireless, Inc," only, of which he is the owner and operator. See Plaintiffs' **Exhibit "E"** at p. 60, l. 8 – p. 61, l. 14.

36. Defendant GH Wireless II, Inc. operates a wireless store located at 43 South Fourth Avenue, Mount Vernon, New York. Ex. E, Hasbani Dep., at 60:8-24.

**RESPONSE:** Disputed. No such entity exists under the control, operation, or founding of Defendant Hasbani. Defendant Hasbani testified to the existence of "GH Wireless, Inc," only, of which he is the owner and operator. See Plaintiffs' **Exhibit "E"** at p. 60, l. 8 – p. 61, l. 14.

37. Hasbani is the sole owner and shareholder of GH Wireless II, Inc. Ex. E, Hasbani Dep., at 61:5-9.

**RESPONSE:** Disputed. No such entity exists under the control, operation, or founding of Defendant Hasbani. Defendant Hasbani testified to the existence of "GH Wireless, Inc," only, of which he is the owner and operator. See Plaintiffs' **Exhibit "E"** at p. 60, l. 8 – p. 61, l. 14.

38. Hasbani is the signatory to GH Wireless II, Inc.'s bank accounts and corporate tax returns. Ex. E, Hasbani Dep., at 61:10-14.

**RESPONSE:** Disputed. No such entity exists under the control, operation, or founding of Defendant Hasbani. Defendant Hasbani testified to the existence of "GH Wireless, Inc," only, of which he is the owner and operator. See Plaintiffs' **Exhibit "E"** at p. 60, l. 8 – p. 61, l. 14.

**G. Kevin De La Cruz ("De La Cruz")**

39. De La Cruz was hired to work as a retail clerk at several wireless stores owned by Hasbani. Ex. C, FAC, at ¶ 50.

**RESPONSE:** Undisputed.

40. De La Cruz was employed by Defendants from on or about February 2017 to on or about March 25, 2018 and then again from in or about December 2018 until March 30, 2022. Ex. C, FAC, at ¶ 51; Exhibit K ("Ex. K"), De La Cruz Chart.

**RESPONSE:** Undisputed.

41. De La Cruz worked at the Cell Phones of Harlem, Inc. wireless store. Ex. E, Hasbani Dep., at 42:17-19, 61:25-62:3.

**RESPONSE:** Undisputed.

42. De La Cruz worked at the Cell Phones of Harlem, Inc. wireless store from February 2017 until March 25, 2018. Ex. K, De La Cruz Chart.

**RESPONSE:** Disputed. Plaintiff KEVIN DE LA CRUZ (hereinafter "Plaintiff De La Cruz") testified that he worked at Cell Phones of Harlem, Inc. until March 2018, but did not provide a specific date. See Plaintiffs' **Exhibit "F,"** Deposition Transcript of Plaintiff Kevin De La Cruz, at p. 42, l. 4-5 (infra) (Plaintiff De La Cruz testified he was fired in March of 2018).

43. During this time, De La Cruz worked six (6) to seven (7) days a week and at least ten (10) hours a day from Monday through Saturday and seven (7) hours a day on Sunday. Ex. F, De La Cruz Depo., at 16:6-24, 18:3-25, 19:2-3, 40:17-41:6, 45:2-46:16; Ex. H, Amador Dep., at 65:22-66:6.

**RESPONSE:** Disputed as to days of the week worked. Plaintiff De La Cruz testified he would work a seventh day of the weekend, Sunday, only upon request when Cell Phones of Harlem, Inc., **or if Plaintiff De La Cruz himself knowingly, willingly, and voluntarily took an extra day's work**. See Plaintiffs' **Exhibit "F"** (infra) at p. 18, l. 17-18 (Plaintiff De La Cruz would come into work or take on a Sunday work shift if a coworker called out); see also p. 45, l. 8-16. Moreover, the portion of the deposition in nonparty witness Amador's deposition cited to, p. 65, l. 22 – p. 66, l. 6, refers specifically to the month and year of February 2018 only.

44. During this time period, the standard workweek was six (6) days. Ex. F, De La Cruz Dep., at 17:24-18:2.

**RESPONSE:** Undisputed.

45. From February 2017 to January 28, 2018, De La Cruz was paid $80.00 a day. Ex. F, De La Cruz Dep., at 15:21-16:5, 36:18-22.

**RESPONSE:** Disputed. Plaintiff De La Cruz did not testify to a specific date(s) in January 2018 for when his payrate was $80.00. See Plaintiffs' **Exhibit "F"** (infra) at p. 15, l. 7-25, and p. 36, l. 18-25.

46. In January 2018, De La Cruz received an increase in pay to $100.00 a day. Ex. F, De La Cruz Dep., at 49:20-50:18.

**RESPONSE:** Undisputed.

47. De La Cruz worked at the MDBH Mobile 3 Inc. wireless store. Ex. E, Hasbani Dep., at 36:20-22, 62:5-7.

**RESPONSE:** Undisputed.

48. De La Cruz worked at the MDBH Mobile 3, Inc. wireless store from December 2018 to March 21, 2020. Ex. K, De La Cruz Chart; Exhibit L ("Ex. L"), Defendants' 2018 Internal Pay Records; Exhibit M ("Ex. M"), Defendants' 2019 Internal Pay Records; Exhibit N ("Ex. N"), Defendants' 2020 Internal Pay Records.

**RESPONSE:** Undisputed.

49. When De La Cruz worked at the MDBH Mobile 3 Inc. wireless store, his schedule was store open to store close. Ex. E, Hasbani Dep., at 38:3-5.

**RESPONSE:** Undisputed.

50. During this time, De La Cruz was paid $100.00 a day. Ex. L, Defendants' 2018 Internal Pay Records; Ex. M, Defendants' 2019 Internal Pay Records; Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Undisputed.

51. During this time, De La Cruz regularly worked six (6) days a week. Ex. L, Defendants' 2018 Internal Pay Records; Ex. M, Defendants' 2019 Internal Pay Records; Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. Pursuant to Plaintiff De La Cruz's records, Plaintiff De La Cruz worked four and a half to seven days a week (4.5 to 7). <u>See</u> Plaintiffs' **Exhibits "L," "M,"** and **"N."**

52. During this time, De La Cruz worked ten (10) hours a day. Ex. F, De La Cruz Dep. at 98:22-99:15, 108:11-17.

**RESPONSE:** Undisputed.

53. During the week January 6, 2019 to January 12, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "M,"** 2019 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

54. During the week February 3, 2019 to February 9, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "M,"** 2019 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

55. During the week March 24, 2019 to March 30, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "M,"** 2019 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

56. During the week April14, 2019 to April 20, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "M**," 2019 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

57. During the week July 7, 2019 to July 13, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "M,"** 2019 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

58. During the week August 11, 2019 to August 17, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3,Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "M,"** 2019 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

59. During the week December 8, 2019 to December 14, 2019, De La Cruz worked six (6) days at the MDBH Mobile 3, Inc. wireless store. Ex. M, Defendants' 2019 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "M,"** 2019 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

60. During the week January 12, 2020 to January 18, 2020, De La Cruz worked seven (7) days at the MDBH Mobile 3, Inc. wireless store. Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "N,"** 2020 Internal Pay Records, show that Plaintiff was paid for seven (7) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

61. During the week January 26, 2020 to February 1, 2020, De La Cruz worked seven (7) days at the MDBH Mobile 3, Inc. Wireless store. Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "N,"** 2020 Internal Pay Records, show that Plaintiff was paid for seven (7) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

62. De La Cruz worked at the High Speed Wireless1618, Inc. wireless store. Ex. E, Hasbani Dep., at 52:15-18, 62:8-10.

**RESPONSE:** Disputed. Defendant Hasbani provides conflicting testimony as to whether Plaintiff De La Cruz worked at the High Speed Wireless1618, Inc. wireless store. See Plaintiffs' **Exhibit "E"** at p. 52, l. 15-18 ("For a small period of time, *I believe, he did, yes*.") ("I believe" is not synonymous for an affirmative declaration of knowledge); see also Plaintiff's **Exhibit "E"** at p. 62, l. 8-10 (Defendant Hasbani answered in the affirmative when asked in a succession of questions about the stores worked at by Kevin De La Cruz)

63. De La Cruz worked at the High Speed Wireless 1618, Inc. wireless store from March 2020 to July 11, 2020. Ex. K, De La Cruz Chart; Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. Plaintiff De La Cruz worked at High Speed Wireless 1618, Inc., from March 22, 2020, up through and including July 11, 2020. See Plaintiffs' **Exhibit "N"** at p. 5.

64. During this time, De La Cruz was paid $120.00 a day. Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. Plaintiff De La Cruz was paid between $120.00 to $140.00 a day for the time period of March 22, 2020, up through and including July 11, 2020. See Plaintiffs' **Exhibit "N"** at p. 5-9.

65. During this time, De La Cruz worked six (6) days a week and at least ten (10) hours a day. Ex. F, De La Cruz Dep., at 132:3-19; Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. Plaintiff De La Cruz did not steadily work six (6) days a week, ten (10) hours a day while working at the store located at 1618 Westchester Avenue, Bronx, New York. See Plaintiffs' **Exhibit "N"** at p. 5-9.

66. During the week of March 29, 2020 to April 4, 2020, De La Cruz worked six (6) days at the High Speed Wireless 1618, Inc. wireless store. Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "N,"** 2020 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

67. During the week of May 10, 2020 to May 16, 2020, De LaCruz worked six (6) days at the High Speed Wireless 1618, Inc. wireless store. Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "N,"** 2020 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

68. De La Cruz worked at the MDBH Mobile 7Inc. wireless store. Ex. E, Hasbani Dep., at 59:3-5, 62:11-12.

**RESPONSE:** Undisputed.

69. De La Cruz worked at the MDBH Mobile 7 Inc. wireless store from July 12, 2020to July 17, 2021. Ex. K, De La Cruz Chart; Ex. N, Defendants' 2020 Internal Pay Records; Exhibit ("Ex. O"), Defendants' 2021 Internal Pay Records.

**RESPONSE:** Undisputed.

70. During the time period July 12, 2020 to April24, 2021, De La Cruz was paid $120.00 a day. Ex. N, Defendants' 2020 Internal Pay Records; Ex. O, Defendants' 2021InternalPay Records.

**RESPONSE:** Undisputed.

71. During the time period April 25, 2021 to July 17, 2021, De La Cruz was paid $140.00 a day. Ex. O, Defendants' 2021Internal Pay Records.

**RESPONSE:** Undisputed.

72. During the time period July 12, 2020 to July 17, 2021, De La Cruz regularly worked six (6) days a week. Ex. N, Defendants' 2020 Internal Pay Records; Ex. O, Defendants' 2021 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "N,"** 2020 Internal Pay Records, and Plaintiffs' **Exhibit "O,"** Defendants' 2021 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

73. During the week of July 19, 2020 to July 25, 2020, De La Cruz worked six (6) days at the MDBH Mobile 7 Inc. wireless store and was paid $120.00 a day. Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "N**," 2020 Internal Pay Records, and Plaintiffs' **Exhibit "O**," Defendants' 2021 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

74. During the week of August 16, 2020 to August 22, 2020, De La Cruz worked seven (7) days at the MDBH Mobile 7 Inc. wireless store and was paid $120.00 a day. Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "N**," 2020 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz**.

75. During the week of November 15, 2020 to November 21, 2020, De La Cruz worked seven (7) days at the MDBH Mobile 7 Inc. wireless store and was paid $120.00 a day. Ex. N, Defendants' 2020 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "N**," 2020 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours**

worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz.

76. During the week of April 25, 2021 to May 1, 2021, De La Cruz worked six (6) days at the MDBH Mobile 7 Inc. wireless store and was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "N,"** 2020 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz.**

77. During the week of June 20, 2021 to June 26, 2021, De La Cruz worked six (6) days at the MDBH Mobile 7 Inc wireless store and was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "O,"** Defendants' 2021 Internal Pay Records, show that Plaintiff was paid for six (6) days of work. **The records do not show the hours worked per day by Plaintiff De La Cruz, Plaintiff De La Cruz's hours worked entire workweek, or the job responsibilities assigned to and completed by Plaintiff De La Cruz.**

78. De La Cruz worked at the Cell Phones of Harlem, Inc. wireless store again from July 18, 2021 to on or about August 11, 2021. Ex. K, De La Cruz Chart; Ex. O, Defendants' 2021 Internal Pay Records.

**RESPONSE:** Undisputed.

79.   During this time, De La Cruz was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records.

**RESPONSE:** Undisputed.

80. De La Cruz did not work during the months of September and October 2018. Ex. K, De La Cruz Chart.

**RESPONSE:** Disputed. See Plaintiffs' **Exhibit "F"** at p. 68, l. 12 – p. 71, l. 19 (Plaintiff De La Cruz testified to working at a cell phone store).

81. De La Cruz returned to the Cell Phones of Harlem, Inc. wireless store and worked there from October 3, 2021 to December 11, 2021. Ex. K, De La Cruz Chart; Ex. O, Defendants' 2021 Internal Pay Records.

**RESPONSE:** Disputed. Plaintiff De La Cruz worked at Cell Phones of Harlem, Inc., for the second time from July 2021 up through and including March 2022. See Plaintiffs' **Exhibit "F"** at p. 145, l. 24 – p. 147, l. 3.

82. During this time, De La Cruz was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records.

**RESPONSE:** Undisputed as to the time period of July 2021 up through and including March 2022. See Plaintiffs' **Exhibit "F"** at p. 145, l. 24 – p. 147, l. 3. However, for the purposes of the Plaintiffs' 56.1 original Statement, the undersigned disputes the Plaintiffs' Statement in its Paragraph 82.

83. De La Cruz returned to the High Speed Wireless 1618, Inc. wireless store and worked from December 12, 2021 to March 26, 2022. Ex. K, De La Cruz Chart; Ex. O, Defendants' 2021 Internal Pay Records; Exhibit P ("Ex. P"), Defendants' 2022 Internal Pay Records.

**RESPONSE:** Disputed. Plaintiff De La Cruz did not work full- or part-time at the High Speed Wireless 1618, Inc. wireless store from December 12, 2021 to March 26, 2022. **He acted as a "runner" between Cell Phones of Harlem, Inc., and High Speed Wireless 1618, Inc.** during this time period. See Plaintiffs' **Exhibit "F"** at p. 119, l. 15 – p. 120, l. 17 (discussing how, when, and why Plaintiff De La Cruz's employment ended at Defendants' stores, inclusive of that the last store Plaintiff De Laz Cruz worked at for Defendants was Cell Phones or Harlem, Inc.).

84. During this time, De La Cruz was paid $140.00 a day. Ex. O, Defendants' 2021 Internal Pay Records; Ex. P, Defendants' 2022 Internal Pay Records.

**RESPONSE:** Disputed. Plaintiff De La Cruz was paid $140.00 per day from July 2021 up through and including March 2022. See Plaintiff's **Exhibit "F"** at p. 151, l. 15-24.

85. De La Cruz returned to the Cell Phones of Harlem, Inc. wireless store and worked there for the week of March 27, 2021 through April 2, 2021. Ex. P, Defendants' 2022 Internal Pay Records.

**RESPONSE:** Disputed. Plaintiff De La Cruz worked at Cell Phones of Harlem, Inc., for the second time from July 2021 up through and including March 2022. See Plaintiffs' **Exhibit "F"** at p. 145, l. 24 – p. 147, l. 3.

86. De La Cruz was always paid a daily rate of pay. Ex. E, Hasbani Dep., at 37:15-16.

**RESPONSE:** Disputed. Plaintiff De La Cruz was paid a daily rate of pay along with commissions and bonuses. See Plaintiffs' **Exhibit "F"** at p. 28, l. 5-8 and p. 87, l. 18-25.

87. De La Cruz was never paid time and a half his regular rate of pay when he worked more than forty (40) hours a week. Ex. E, Hasbani Dep., at 75:13-16); Ex. F, De La Cruz Dep., at 47:5-10.

**RESPONSE:** Disputed. Defendant Hasbani did not affirmatively testify whether Plaintiff De La Cruz was or was not paid time and a half for all hours worked over forty (40) during the week. See Plaintiffs' **Exhibit "E"** at p. 75, l. 13-16 (Defendant Hasbani answers "I don't think so.). Moreover, Plaintiff De La Cruz specifically testified to not being paid time and a half while working at MD1 and did not testify to this alleged pay disparity occurring at Defendants' other stores. See Plaintiffs' **Exhibit "F"** at p. 46, l. 17 – p. 47, l. 10.

88. De La Cruz never used a time clock to punch in and punch out. Ex. E, Hasbani Dep., at 41:14-21.

**RESPONSE:** Undisputed.

**H. Anthony Tabas ("Tabas")**

89. Tabas was hired to work as a retail clerk at several wireless stores owned by Hasbani. Ex. C, FAC, at ¶ 50.

**RESPONSE:** Disputed. Plaintiff ANTHONY TABAS (hereinafter "Plaintiff Tabas") was **initially** hired to work as a retail clerk. However, Plaintiff Tabas eventually became a manager at multiple stores for a period of approximately one and a half (1.5) years. See Plaintiffs' **Exhibit "G,"** Deposition of Plaintiff Anthony Tabas, at p. 67, l. 18 – p. 68, l. 24 and p. 93, l. 13 – p. 94, l. 11 (infra).

90. Tabas was employed by Defendants from on or about June 2016 to October 2018. Ex. C, FAC, at ¶ 50; Exhibit I ("Ex. I"), Tabas Chart.

**RESPONSE:** Undisputed.

91. When Tabas was hired, he was placed at the GH Wireless Inc. wireless store. Ex. E, Hasbani Dep., at 60:20-23.

**RESPONSE:** Undisputed.

92. Tabas worked at the GH Wireless Inc. store from June 26, 2016 through the end of July 2016. Ex. E, Hasbani Dep., at 64:11-25, 65:2-5; Ex. I, Tabas Chart.

**RESPONSE:** Undisputed.

93. During this time, Tabas worked six (6) days a week and ten (10) hours a day. Exhibit G ("Ex. G"), Deposition Transcript of Anthony Tabas, dated January 19, 2023 ("Tabas Dep."), at 33:16-22.

**RESPONSE:** Undisputed.

94. During this time, Tabas was paid $100.00 to $120.00 a day plus commissions. Ex. G, Tabas Dep., at 31:21-32:18, 45:21-46:3.

**RESPONSE:** Undisputed.

95. During this time, Tabas was never paid any overtime compensation. Ex. G, Tabas Dep., at 33:23-25, 46:14-19.

**RESPONSE:** Disputed. Plaintiff Tabas did not explicitly testify in those cited portion of his deposition testimony that he was never paid overtime compensation during this time period.

96. Tabas worked at the Cell Phones of Harlem, Inc. wireless store. Ex. E, Hasbani Dep., at 59:20-23.

**RESPONSE:** Undisputed.

97. Tabas worked at the Cell Phones of Harlem, Inc. wireless store from August 2016 through December 2017. Ex. E, Hasbani Dep., at 65:9-13; Ex. I, Tabas Chart.

**RESPONSE:** Disputed. Plaintiff Tabas testified that he worked at Cell Phones of Harlem, Inc., from August 2016 until December 2017 **or January 2018**. He could not recall with certainty when his time at Cell Phones of Harlem, Inc., came to an end. See Plaintiffs' **Exhibit "G"** at p. 53, l. 4 – p. 54, l. 23.

98.   During this time, Tabas worked six (6) days a week and at least ten (10) hours each day. Ex. G, Tabas Dep., at 59:17-60:20, 84:18-25.

**RESPONSE:** Disputed. Plaintiff Tabas testified that "maybe five days out of a six workweek" would his hours be greater than ten (10). See Plaintiffs' **Exhibit "G"** at p. 60, l. 6-14.

99. During this time, Tabas was paid $140.00 a day. Ex. G, Tabas Dep., at 54:24-55:20, 57:12-19.

**RESPONSE:** Disputed. Plaintiff Tabas' pay additionally included commissions, as well as bonuses at Christmastime. See Plaintiffs' **Exhibit "G"** at p. 55, l. 22 – p. 56, l. 15 and p. 78, l. 9.

100. During this time, Tabas was never paid for any extra hours, he was only paid his daily rate of pay. Ex. G, Tabas Dep., at 61:19-62:13.

**RESPONSE:** Disputed. The portion of Plaintiff Tabas' deposition testimony cited to was Plaintiff Tabas' description of specific instances of where he allegedly remained at one of the Defendants' stores a few hours after closing time. The question posed to Plaintiff Tabas did not speak in generalities. See Plaintiffs' **Exhibit "G"** at p. 62, l. 10-13. Moreover, Plaintiff Tabas' pay, in addition to his daily rate of pay, included bonuses at Christmastime and commissions. See Plaintiffs' **Exhibit "G"** at p. 55, l. 22 – p. 56, l. 15 and p. 78, l. 9.

101. Tabas worked at the High Speed Wireless 1618, Inc. wireless store. Ex. E,Hasbani Dep., at 46:21-22, 60:3-5.

**RESPONSE:** Undisputed.

102. Tabas worked at the High Speed Wireless 1618, Inc. wireless store from January2018 through June2018. Ex. E, Hasbani Dep., at 68:14-19; Ex. I.

**RESPONSE:** Disputed. Plaintiff Tabas worked at High Speed Wireless 1618, Inc., from approximately January 2018 up through and including August 2018. See Plaintiffs' **Exhibit "G"** at p. 91, l. 7-8.

103. During this time, Tabas was paid $150.00 a day. Exhibit J ("Ex. J"), Defendants' Internal Pay Records for Tabas.

**RESPONSE:** Disputed. Plaintiff Tabas was paid $170.00 a day. See Plaintiffs' **Exhibit "G"** at p. 96, l. 12 – p. 97. l. 7.

104. During this time, Tabas worked six (6) to seven (7) days a week. Ex. G, Tabas Dep.at 93:8-12.

**RESPONSE:** Disputed. Plaintiff Tabas would only work a seventh day, Sunday, on an "as needed" basis, or because his job responsibilities as manager of the High Speed Wireless 1618, Inc. store necessitated him to work on a Sunday. See Plaintiffs' **Exhibit "G"** at p. 93, l. 13 – p. 94, l. 11.

105. During this time, Tabas worked ten (10) hours a day on Monday through Sunday. Ex. G, Tabas Dep., at 94:23-25, 95:2-21.

**RESPONSE:** Disputed. Plaintiff Tabas would only work a seventh day, Sunday, on an "as needed" basis, or because his job responsibilities as manager of the High Speed Wireless

1618, Inc. store necessitated him to work on a Sunday. <u>See</u> Plaintiffs' **Exhibit "G"** at p. 93, l. 13 – p. 94, l. 11.

106. During the week January 28, 2018 to February 3, 2018, Tabas worked six days (6) at the High Speed Wireless 1618, Inc. store. Ex. J, Defendants' Internal Pay Records for Tabas.

**<u>RESPONSE</u>:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "J,"** Internal Pay Records for Tabas, show that Plaintiff was paid for six (6) days of work. The records do not show the hours worked per day by Plaintiff Tabas, Plaintiff Tabas' hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff Tabas.

107. During the weeks beginning on February 11, 2018 and February 18, 2018, Tabas worked seven days (7) per week at the High Speed Wireless1618, Inc. store. Ex. J, Defendants' Internal Pay Records for Tabas.

**<u>RESPONSE</u>:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "J,"** Internal Pay Records for Tabas, show that Plaintiff was paid for seven (7) days of work. The records do not show the hours worked per day by Plaintiff Tabas, Plaintiff Tabas' hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff Tabas.

108. During the weeks beginning on February 25, 2018 and through March17, 2018, Tabas worked six days (6) at the High Speed Wireless 1618, Inc. store. Ex. J, Defendants' Internal Pay Records for Tabas.

**<u>RESPONSE</u>:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "J,"** Internal Pay Records for Tabas, show that Plaintiff was paid for six (6) days of work. The records do not show the hours worked per day by Plaintiff Tabas, Plaintiff Tabas' hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff Tabas.

109. During the week March 18, 2018 to March 24, 2018, Tabas worked seven days (7) at the High Speed Wireless 1618, Inc. store. Ex. J, Defendants' Internal Pay Records for Tabas.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "J,"** Internal Pay Records for Tabas, show that Plaintiff was paid for seven (7) days of work. The records do not show the hours worked per day by Plaintiff Tabas, Plaintiff Tabas' hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff Tabas.

110. During the week March 25, 2018 to March 31, 2018, Tabas worked six days (6) at the High Speed Wireless 1618, Inc. store. Ex. J, Defendants' Internal Pay Records for Tabas.

**RESPONSE:** Disputed. The records preserved and presented in Plaintiffs' **Exhibit "J,"** Internal Pay Records for Tabas, show that Plaintiff was paid for six (6) days of work. The records do not show the hours worked per day by Plaintiff Tabas, Plaintiff Tabas' hours worked that entire workweek, or the job responsibilities assigned to and completed by Plaintiff Tabas.

111. Tabas worked at the MDBH Mobile 3 Inc. wireless store. Ex. E, Hasbani Dep., at 34:3-10.

**RESPONSE:** Undisputed.

112. Tabas worked at the MDBH Mobile 3 Inc. wireless store from July 2018 to October 3, 2018. Ex. E, at 68:20-25; Ex. I, Tabas Chart.

**RESPONSE:** Undisputed.

113. During this time, Tabas worked six (6) days a week and ten (10) hours each day Ex. G, Tabas Dep., at 119:20-25, 120:12.

**RESPONSE:** Undisputed.

114. Tabas worked at the MDBH Mobile 3 Inc. wireless store where he was the only employee that worked at the store. Ex. E, Hasbani Dep., at 30:6-11.

27

**RESPONSE:** Disputed. Defendant Hasbani did not testify Plaintiff Tabas was the only employee at the MDBH Mobile 3 Inc.. See Plaintiffs' **Exhibit "E"** at p. 29, l. 15 – p. 30, l. 14.

115. During this time, Tabas was paid $130.00 a day. Ex. J, Defendants' Internal Pay Records for Tabas.

**RESPONSE:** Undisputed.

116. During his employment, Tabas was always paid by the day, Ex. E, Hasbani Dep., at 27:22-24, 74:8-9.

**RESPONSE:** Undisputed.

117. Tabas was never paid overtime compensation when he worked more than forty (40) hours a week. Ex. E, Hasbani Dep., at 74:13-16; Ex. G, Tabas Dep., at 125:14-17.

**RESPONSE:** Disputed. Defendant Hasbani testified that he "[does not] think so," which is neither a confirmation nor a denial. See Plaintiffs' **Exhibit "E"** at p. 74, l. 3 – p. 75, l. 12. Moreover, the portion of Plaintiff Tabas' testimony cited to recounts his work at and payments from the 2085 Lexington Avenue store. The question posed to Plaintiff Tabas was not presented in generalities on overtime pay at all stores. See Plaintiffs' **Exhibit "G"** at p. 125, l. 14-17.

118. Tabas was never paid time and a half his regular rate of pay when he worked more than forty (40) hours a week. Ex. E, Hasbani Dep., at 75:8-12.

**RESPONSE:** Disputed. Defendant Hasbani testified that he "[does not] think so," which is neither a confirmation nor a denial. See Plaintiffs' **Exhibit "E"** at p. 75, l. 8-12.

119. Whenever Tabas worked a half day, he was just paid for a half a day. Ex. E, Hasbani Dep., at 78:17-20.

**RESPONSE:** Disputed. This payment schedule specifically applies to only the 2085 Lexington Avenue store. See Plaintiffs' **Exhibit "E"** at p. 78, l. 2-20.

120. Tabas' schedule during his employment was from store open to store close. Ex. E, Hasbani Dep., at 29:11-14.

**RESPONSE:** Disputed. Defendant Hasbani testified that all his employees, inclusive of but not limited to Plaintiff Tabas, would "a lot" come in late and sometimes leave early. He also testified that the managers, such as Plaintiff Hasbani, set their own work schedules on some occasions.  See Plaintiffs' **Exhibit "E"** at p. 28, l. 25 – p. 29, l. 10, and p. 29, l. 18 – p. 30, l. 2.

121. Tabas never used a time clock to punch in and punch out. Ex. E, Hasbani Dep., at 41:14-21.

**RESPONSE:** Disputed. The portion of Defendant Hasbani's deposition testimony cited to specifically refers to Cell Phones of Harlem, Inc.. See Plaintiffs' **Exhibit "E"** at p. 40, l. 23 – p. 41, l. 21.

**I. Moris Hasbani ("Hasbani")**

122. Hasbani is a resident of the State of New York. Ex. C, FAC, at ¶ 36.

**RESPONSE:** Undisputed.

123. Hasbani has participated on a regular basis in overseeing the wireless stores that he owns. Ex. E., Hasbani Dep., at 63:9-15.

**RESPONSE:** Undisputed.

124. Hasbani decides the days and hours that his cell phone stores are open for business. Ex. E, Hasbani Dep., at 20:2-13.

**RESPONSE:** Disputed. Defendant Hasbani's cited testimony was specifically referring to Cell Phones of Harlem, Inc.. See Plaintiffs' **Exhibit "E"** at p. 19, l. 8 – p. 20, l. 13.

125. Hasbani has the authority to hire employees, and in fact did hire employees. Ex. E, Hasbani Dep., at 37:6-11; 49:8-14, 50:2-4.

**RESPONSE:** Disputed. The portions of Defendant Hasbani's testimony cited only discusses hiring Plaintiffs and Eli Hasbani, Defendant MORIS HASBANI's brother, as well as Eli Hasbani's job responsibilities. <u>See</u> Plaintiffs' **Exhibit "E"** at p. 37, l. 6-11 (discussing hiring of Plaintiffs); <u>see also</u> p. 49, l. 8-14 (discusses brother Eli's job responsibilities), <u>see also</u> p. 50, l. 2-4 (further discusses brother Eli's job responsibilities).

126. Hasbani hired his brother, Eli, to help oversee the wireless stores that he owns. Ex. E, Hasbani Dep., at 49:8-14, 50:2-4.

**RESPONSE:** Undisputed.

127. Hasbani hired De La Cruz to work at several of his stores. Ex. E, Hasbani Dep., at 37:6-11.

**RESPONSE:** Disputed. Defendant Hasbani testified that he hired Plaintiff De La Cruz to work at "one or more" of the stores owned by him, not "several." <u>See</u> Plaintiffs' **Exhibit "E"** at p. 37, l. 3-11.

128. Hasbani decided when De La Cruz was going to work at the MDBH Mobile 3 Inc. wireless store located at 2085 Lexington Avenue, New York, New York. Ex. E, Hasbani Dep., at 36:23-37:2.

**RESPONSE:** Undisputed.

129. Hasbani decided that De La Cruz was going to work at the MDBH Mobile 7 Inc. wireless store located at 271 West 125th Street, New York, New York. Ex. E, Hasbani Dep., at 59:6-8.

**RESPONSE:** Undisputed.

130. Hasbani hired Tabas and placed him to work in the wireless store operated by GH Wireless II, Inc. Ex. E, Hasbani Dep., at 27:11-21; 61:15-20.

**RESPONSE: GH Wireless II, Inc. is a nonexistent entity**. Defendant Hasbani testified to the existence of "GH Wireless, Inc." but not "GH Wireless II, Inc.". See Plaintiffs' **Exhibit "E"** at p. 60, l. 8 – p. 61, l. 14.

131. Hasbani decided that Tabas was going to work at the MDBH Mobile 3 Inc. wireless store located at 2085 Lexington Avenue, New York, New York. Ex. E, Hasbani Dep., at 34:3-5.

**RESPONSE:** Undisputed.

132. Hasbani decided which wireless stores Plaintiffs were going to work at and when they were going to work for each store. Ex. E, Hasbani Dep., at 28:8-10, 37:12-14, 62:17-20.

**RESPONSE:** Disputed as to Plaintiff Tabas. The portions of Defendant Hasbani's testimony cited refer solely to Plaintiff De La Cruz, and Defendant Hasbani could not testify with certainty the control he had in setting Plaintiff Tabas' schedule. See Plaintiffs' **Exhibit "E"** at p. 28, l. 11-13 (Q: Did you decide how many days a week that Anthony Tabas would work? A: I don't remember.), p. 37, l. 12-14 (just discussing Plaintiff De La Cruz), and p. 61, l. 25 – p. 62, l. 20 (again solely discussing Plaintiff De La Cruz).

133. Hasbani has the authority to fire employees, and in fact did fire employees. Ex. G, Tabas Dep., at 123:21-124:19.

**RESPONSE:** Disputed. The portion of Plaintiff Tabas' testimony cited to discusses commission payments. Moreover, Plaintiff Tabas testified that he was not fired by Defendant Hasbani. See Plaintiffs' **Exhibit "G"** at p. 129, l. 9-10 ("wouldn't say he fired me. I was just -- I walked away…"). In fact, Defendant Hasbani specifically recalled he did not fire Plaintiff De La

Cruz or Plaintiff Tabas. <u>See</u> Plaintiffs' **Exhibit "E"** at p. 83, l. 12-19 (Plaintiff Tabas); <u>see also</u> Plaintiffs' **Exhibit "E"** at p. 91, l. 6-8 and p. 125, l. 120-121 (Plaintiff De La Cruz).

134. Hasbani has the authority to set employees' schedules. Ex. H, Amador Dep., at 34:20-22.

**<u>RESPONSE</u>:** Disputed. Nonparty witness Amador was referring to Defendant Hasbani's authority at/over Cell Phones of Harlem, Inc., specifically. <u>See</u> Plaintiffs' **Exhibit "H"** p. 34, l. 2-7.

135. Hasbani has the ultimate responsibility to ensure his employees got paid. Ex. H, Amador Dep., at 32:18-20, 33:8-19.

**<u>RESPONSE</u>:** Disputed. Ms. Amador is responsible for the payments of commissions, which are separate from an employee's weekly pay. <u>See</u> Plaintiffs' **Exhibit "H"** p. 33, l. 9-13.

136. Hasbani decides the manner in which employees are paid. Ex. E, Hasbani Dep., at 22:4-13.

**<u>RESPONSE</u>:** Disputed. The portion cited of Defendant Hasbani's testimony solely discusses his paying one employee, Mayra, and the manner in which she gets paid. <u>See</u> Plaintiffs' **Exhibit "E"** p. 21, l. 15 – p. 22, l. 13.

137. Hasbani sets the daily rates of all the employees. Ex. F, De La Cruz Dep., at 37:22-25; Ex. H, Amador Dep., at 79:9-11.

**<u>RESPONSE</u>:** Disputed. No support is provided for Defendant Hasbani's alleged control over setting the daily rate of pay for Plaintiff Tabas or all other employees, except Plaintiff De La Cruz, nonparty witness Amador, and Eli Hasbani. Moreover, the portions of Defendant Hasbani's testimony cited to for Plaintiff De La Cruz precisely discuss Plaintiff De La Cruz's

pay while working at Cell Phones of Harlem, Inc. <u>See</u> Plaintiffs' **Exhibit "F"** at p. 36, l. 18 – p. 37, l. 24.

138. Hasbani decides Amador's daily rate of pay. Ex. E, Hasbani Dep., at 19:5-7.

**RESPONSE:** Undisputed.

139. Hasbani decides what Eli's daily rate is. Ex. E, Hasbani Dep., at 49:23-25.

**RESPONSE:** Undisputed.

140. During Tabas' employment, Hasbani decided the daily rate of pay that Tabas received. Ex. E, Hasbani Dep., at 27:25-28:3, 36:8-11, 47:3-6.

**RESPONSE:** Undisputed.

141. During De La Cruz's employment, Hasbani decided the daily rate of that De La Cruz received. Ex. E, Hasbani Dep., at 37:17-19.

**RESPONSE:** Undisputed.

142. Hasbani has the authority to increase or decrease employee's daily rates. Ex. E, Hasbani Dep., at 28:4-7, 37:20-23, 81:14-18.

**RESPONSE:** Undisputed.

143. Hasbani has the authority to decide the amount of commissions employees would receive. Ex. E, Hasbani Dep., at 36:12-19.

**RESPONSE:** Disputed. The cited portion of Defendant Hasbani's transcript discusses only Plaintiff Tabas' commissions received while Plaintiff Tabas worked at the 2085 Lexington Avenue store. Commissions were not discussed in generalities. <u>See</u> Plaintiffs' **Exhibit "E"** at p. 36, l. 3-19.

144. Hasbani determines employees' job duties. Ex. E, Hasbani Dep., at 50:5-7.

**RESPONSE:** Disputed. The cited portion of Defendant Hasbani's transcript discusses only Eli Hasbani's job duties. Moreover, no questions were presented to Defendant Hasbani as to whether Defendant Hasbani controls the manner in which his employees perform their job responsibilities, including the Plaintiffs herein. See Plaintiffs' **Exhibit "E"** at p. 49, l. 8 – p. 50, l. 7.

145. Hasbani is Amador's boss and direct supervisor. Ex. H, Amador Dep., at 11:5-8.

**RESPONSE:** Undisputed.

146. Hasbani was De La Cruz's direct boss when he worked at the MDBH Mobile 3 Inc. wireless store. Ex. E, Hasbani Dep., at 37:24-38:2.

**RESPONSE:** Undisputed.

147. Hasbani was Tabas' direct boss when Tabas worked at the MDBH Mobile 3 Inc. wireless store at 2085 Lexington Avenue, New York, New York. Ex. E, Hasbani Dep., at 36:3-7.

**RESPONSE:** Disputed. Defendant Hasbani testified that he was Plaintiff Tabas' "boss" because he, Defendant Hasbani, owned that store. Defendant Hasbani did not explicitly state he was Plaintiff Tabas' "**direct** boss." See Plaintiffs' **Exhibit "E"** at p. 36, l. 3-7 (emphasis added).

148. Hasbani decided to change the corporate name from MRBH Mobile Inc. to High Speed Wireless 1618, Inc. Ex. E, Hasbani Dep., at 53:2-5.

**RESPONSE:** Undisputed.

**J. Record Keeping Policies**

149. Employees of Cell Phones of Harlem, Inc. are not given paystubs with their wages. Ex. H, Amador Dep. at 57:11-14, 60:3-5.

**RESPONSE:** Disputed. Nonparty witness Amador could not testify with certainty whether or not employees of that store were given paystubs with their wages. <u>See</u> Plaintiffs' **Exhibit "H"** at p. 57, l. 11-14 ("Not that I know of.") and p. 60, 3-5 ("Not to my knowledge.").

150. De La Cruz never received paystubs with his weekly wages. Ex. H, Amador Dep., at 60:3-8, 80:21-24.

**RESPONSE:** Disputed. Nonparty witness Amador could not testify with certainty whether or not Plaintiff De La Cruz received paystubs with his weekly wages while working at Cell Phones of Harlem. Moreover, Ms. Amador was not asked about the pay practices of Defendants' other stores. <u>See</u> Plaintiffs' **Exhibit "H"** at p. 60, l. 3-8 ("Not to my knowledge."), and p. 80, l. 18-24 ("Not to my knowledge.").

151. Tabas never received paystubs during his employment. Ex. H, Amador Dep., at 60:3-8, 80:21-24.

**RESPONSE:** Disputed. Nonparty witness Amador could not testify with certainty whether or not Plaintiff Tabas received paystubs with his weekly wages while working at Cell Phones of Harlem. Moreover, Ms. Amador was not asked about the pay practices of Defendants' other stores. <u>See</u> Plaintiffs' **Exhibit "H"** at p. 60, l. 3-8 ("Not to my knowledge."), and p. 80, l. 18-24 ("Not to my knowledge.").

152. De La Cruz never received a wage notice at the time of his hiring. Ex. H, Amador Dep. at 72:16-74:10.

**RESPONSE:** Disputed. **Nonparty witness was never explicitly asked whether Plaintiff De La Cruz, or any employees, were given a wage notice at the time of hiring.** Ms. Amador testified that Plaintiff De La Cruz did not receive a wage notice **at the time of his interview with her for the job position**, which nonparty witness interpreted the Plaintiffs' question to be asking about the interviewing of an employee and was not corrected by the Plaintiffs' counsel. See Plaintiffs' **Exhibit "H"** at p. 72, l. 12 – p. 73, l. 20; see also Plaintiffs' **Exhibit "H"** at p. 73, l. 21 – p. 74, l. 6 (Ms. Amador discusses procedures after hiring).

**K. Defendants' Time Keeping and Pay Policies**

153. None of the wireless stores owned by Hasbani have ever had a time clock in them. Ex. E, Hasbani Dep., at 41:8-10, 108:22-24.

**RESPONSE:** Undisputed.

154. No employee that has ever worked at Hasbani's wireless stores has punched in and punched out. Ex. E, Hasbani Dep., at 41:22-42:3.

**RESPONSE:** Undisputed.

155. Employees of Cell Phones of Harlem, Inc. are paid a daily rate of pay. Ex. H, Amador Dep., at 56:4-6, 71:13-17.

**RESPONSE:** Undisputed.

156. Amador receives a daily rate of pay as her compensation. Ex. E, Hasbani Dep., at 19:3-4, Ex. H, Amador Dep., at 63:18-23, 76:24-77:2.

**RESPONSE:** Disputed. Defendant Hasbani testifies that nonparty witness Amador receives a daily rate of pay but does not explicitly state this pay alone is her compensation. See

Plaintiffs' **Exhibit "E"** at p.19, l. 3-4. Moreover, Ms. Amador's compensation included commissions. <u>See</u> Plaintiffs' **Exhibit "H"** at p. 33, l. 5-6 and p. 47, l. 16-18.

157. Eli receives a daily rate of pay. Ex. E, Hasbani Dep., at 49:21-22.

**RESPONSE:** Undisputed.

158. No employee who ever worked for a wireless store owned by Hasbani has been paid time and a half when they worked more than forty (40) hours in a week. Ex. E, Hasbani Dep., at 75:21-25; Ex. H, Amador Dep., at 68:2-24, 70:5-10, 71:8-72:4.

**RESPONSE:** Undisputed.

159. Amador has never been paid overtime compensation for working more than forty hours a week. Ex. H, Amador Dep., at 67:17-21, 68:13-24, 75:21-25.

**RESPONSE:** Disputed. Nonparty witness Amador could not testify with certainty as to whether or not she had ever been paid overtime but recalled being paid overtime at some points in her employment. <u>See</u> Plaintiffs' **Exhibit "H"** at p. 67, l. 17 – p. 68, l. 12 ("So at some point after like a certain time, let's say if hypothetically we went over like maybe thirty minutes past eight o'clock or something of that nature, that was considered like, you know, overtime. Like anything over that you'll get paid overtime.").

160. Hasbani has never instructed Amador to pay any of the employees at the Cell Phones of Harlem, Inc. wireless store overtime compensation when they worked more than forty (40) hours in a week. Ex. H, Amador Dep., at 71:25-72:4.

**RESPONSE:** Disputed. Nonparty witness Amador could not testify with certainty whether or not she was instructed by Defendant Hasbani to pay overtime compensation to employees of Cell Phones of Harlem, Inc. when they worked more than forty (40) hours in a week. <u>See</u> Plaintiffs' **Exhibit "H"** at p. 71, l. 20 – p. 72, l. 4 ("Not to my recollection.").

**L. FLSA Coverage**

161. The wireless stores at which Tabas and De La Cruz worked accepted credit cards. Ex. E, Hasbani Dep., at 50:16-18.

**RESPONSE:** Undisputed.

162. Tabas' and De La Cruz's job duties were to sell phones and accessories. Ex. E, Hasbani Dep., at 50:24-51:9; Ex. G, Tabas Dep., at 29:14-21; Ex. H, Amador Dep., at 59:9-14.

**RESPONSE:** Disputed. The Plaintiffs' job responsibilities also included customer service in addition to sales and organizing and cleaning the stores. Plaintiff Tabas also has managerial job responsibilities of managing other employees and working directly with Defendant Hasbani. See Plaintiffs' **Exhibit "G"** at p. 64, l. 5-20, p. 66, l. 4-5, and p. 67-73.

163. As part of their job duties, Tabas and De La Cruz processed credit card transactions on a daily basis. Ex. E, Hasbani Dep., at 51:15-20.

**RESPONSE:** Undisputed. However, Plaintiff Tabas also has managerial job responsibilities of managing other employees and working directly with Defendant Hasbani. See Plaintiffs' **Exhibit "G"** at p. 64, l. 5-20, p. 66, l. 4-5, and p. 67-73.

164. As part of their job duties, Tabas and De La Cruz were responsible for stocking inventory and store maintenance, including sweeping, mopping, and otherwise cleaning the back office, bathroom, the front of the store, and outside the store. Ex. F, De La Cruz Dep., at 35:17-36:7; Ex. G, Tabas Dep., at 92:25-93:7; Ex. H, Amador Dep., at 51:3-52:20).

**RESPONSE:** Undisputed. However, Plaintiff Tabas also has managerial job responsibilities of managing other employees and working directly with Defendant Hasbani. See Plaintiffs' **Exhibit "G"** at p. 64, l. 5-20, p. 66, l. 4-5, and p. 67-73.

165. Tabas and De La Cruz were individuals engaged in interstate commerce within the scope of their job duties by processing credit card payments through companies located outside of the State of New York. Ex. C, FAC, at ¶ 88; Ex. D, Amended Answer, at ¶ 35.

**RESPONSE:** Disputed. This statement is a legal conclusion, inappropriate for a Statement of Material Facts, and patently in violation of the Federal Rules of Civil Procedure ("FRCP") Rule 56.1.

**M. Willfulness**

166. Hasbani has a basic understanding of what overtime compensation is, specifically that when an employee works over forty (40) hours per week, they are entitled to received time and half their regular rate of pay for every hour over forty (40). Ex. E, Hasbani Dep., at 74:17-75:7.

**RESPONSE:** Disputed. This statement is an opinion as well as a legal conclusion, both of which are inappropriate for a Statement of Material Facts, and patently in violation of the FRCP, Rule 56.1.

167. Hasbani does not recall if he ever tried to determine whether or not any of the employees working at the stores that he owned should be paid overtime compensation when they worked more than forty (40) hours a week. Ex. E, Hasbani Dep., at 87:2-19.

**RESPONSE:** Disputed. The portion cited of Defendant Hasbani's testimony discusses commissions only, not overtime compensation. See Plaintiff's **Exhibit "E"** at p. 86, l. 20 – p. 87, l. 21.

168. Defendants were aware of Plaintiffs' work hours but failed to pay them the full amount of compensation to which they were entitled. Ex. E, Hasbani Dep., at 75:3-16. Ex. J; Ex. L; Ex. M; Ex. N; Ex. O; Ex. P.

**RESPONSE:** Disputed. This statement is a legal conclusion, inappropriate for a Statement of Material Facts, and patently in violation of the FRCP, Rule 56.1.

169. Defendants' failure to pay proper wages in a timely manner has been without good faith, willfully, and with a reckless disregard for Plaintiffs' rights. Ex. C, FAC, at ¶ 82.

**RESPONSE:** Disputed. This statement is an opinion as well as a legal conclusion, both of which are inappropriate for a Statement of Material Facts, and patently in violation of the FRCP, Rule 56.1.

DATED: July 24, 2023
Great Neck, New York

Yours etc,

/s/ *Deborah R. Kick*
**DEBORAH R. KICK, ESQ.**
**HAMRA LAW GROUP, P.C.**
1 Linden Place Suite 207
Great Neck, New York 11021
T. 646-590-0571

TO (via ECF)
**JUSTIN REILLY, ESQ.**
**KEITH WILIAMS, ESQ.**